UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| TERRY D. RUTLEDGE,<br>a/k/a Tori Elise Rutledge,<br><br>    Plaintiff,<br><br>        v.<br><br>ANDREW LIAW, et al.,<br><br>    Defendants. | CAUSE NO. 3:25-CV-657-CCB-SJF |

## OPINION AND ORDER

Terry D. Rutledge, a/k/a Tori Elise Rutledge,[1] a prisoner without a lawyer, moves for a preliminary injunction requiring that prison medical staff provide her with treatment for heart pain, tremors, and digestive issues. (ECF 3.) The court ordered a response from the Warden of Westville Correctional Facility, which has now been filed. (ECF 17.) Rutledge filed a reply in support of her motion. (ECF 18.)

## BACKGROUND

Rutledge is an inmate in the long-term segregation unit at Westville, called the Westville Control Unit ("WCU"). She asserts that she is not receiving adequate medical treatment to address "heart pain from an untreated overdose" that occurred in April 2024, "frightening symptoms of severe tremors" all over her body, and digestive problems. (ECF 5 at 2.) The court permitted her to proceed on a claim for damages

---

[1] Rutledge uses female pronouns when referring to herself. As a courtesy, the court adopts that practice in this order.

against several medical providers and a claim for injunctive relief against the Warden.[2] (*Id.*)

The Warden has submitted medical records and other documents in response to the motion. (ECF 17.) Those records reflect that Rutledge was transferred to WCU from another facility in May 2024. (ECF 17-1 ¶ 5.) Her transfer paperwork indicated that she had active prescriptions for Minipress, Risperdal, fluoxetine, terbinafine HCL, fiber, aspirin, meloxicam (also called "Mobic"), and Keppra; these medications were prescribed to address psychiatric problems, chronic back pain, and stomach issues. (ECF 17-3 at 1.)

Medical records reflect that Rutledge was evaluated by Nurse Katie Jacobs on August 13, 2024, (*Id.* at 15.) Her notes do not reflect that Rutledge complained about any heart pain, tremors, or stomach issues during that visit. (*Id.*) Instead, she raised concerns about pain in her right elbow, being "poisoned" by the water at the prison, and an allergy to cashews. (*Id.*) Nurse Jacobs noted that Rutledge was already taking Mobic for pain. Upon examination, she observed Rutledge to have normal bilateral grip strength in both arms and to be negative for seizures, tremors, irregular heartbeat, or palpitations. (*Id.* at 16-17.)

---

[2] The Warden suggests that this case should not have been permitted to proceed because it is duplicative of *Rutledge v. Warden*, 3:25-CV-546-GSL-SJF (N.D. Ind. filed June 23, 2025). The case he cites to pertains to Rutledge's mental health treatment, risk of suicide, and the propriety of her continued detention in long-term segregation. By contrast, this case involves Rutledge's medical care for certain physical symptoms. The claims raised in the two cases involve different underlying facts and different medical providers. Under the circumstances, the court does not find the cases duplicative.

2

Two weeks later, Rutledge had a chronic care visit with Dr. Andrew Liaw. (*Id*. at 18.) Dr. Liaw noted that Rutledge was taking fiber for constipation and educated her on the need to drink adequate amounts of water. (*Id*.) Dr. Liaw also noted that Rutledge had a normal cardiovascular examination, including a regular heart rhythm. (*Id*. at 20.) Dr. Liaw's plan of care was to continue Rutledge's current course of treatment and follow-up in six months. (*Id*. at 18.)

On March 18, 2025, Dr. Liaw saw Rutledge for another chronic care visit.[3] (*Id*. at 29.) During this visit, Rutledge reported symptoms of tremors and memory loss. (*Id*.) After speaking with Rutledge and conducting an examination, Dr. Liaw determined that Rutledge's reported symptoms—particularly the tremors—were consistent with anxiety. (*Id*.) His cardiovascular examination revealed a normal heart rhythm with no extra sounds or murmurs. (*Id*. at 31.) The doctor also noted that Rutledge's memory loss seemed "very subjective" rather than medically based, especially given that she was able to recount her medical history from three years prior. (*Id*. at 29.) Dr. Liaw reviewed Rutledge's prior laboratory results, which he found "reassuring." (*Id*.) He noted that Rutledge reported "vague" digestive symptoms but determined that no further medical workup was indicated at that time. (*Id*.) He renewed Rutledge's medications, including the fiber and pain medication. (*Id*.) The doctor noted that Rutledge would continue to be followed by mental health professionals. (*Id*. at 29-30.)

---

[3] Between the two visits with Dr. Liaw, Rutledge was evaluated by a non-party psychiatrist and reported that correctional staff were poisoning her food and denying her medication. (ECF 17-3 at 22-23.) The psychiatrist confirmed through prison records that Rutledge was receiving her medications as prescribed. (*Id*. at 23.)

There is no record of Rutledge having put in a request for medical care for tremors, heart problems, or digestive problems since the March 2025 visit with Dr. Liaw. (ECF 17-1 ¶¶ 15-17.) However, she did file a grievance complaining that Dr. Liaw was dismissive of her problems at that visit.[4] (ECF 18-2 at 10.)

## ANALYSIS

"[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis in original). A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

On the first prong, "the applicant need not show that [she] definitely will win the case." *Illinois Republican Party v. Pritzker*, 973 F.3d 760, 763 (7th Cir. 2020). However, "a mere possibility of success is not enough." *Id.* at 762. "A strong showing . . . normally includes a demonstration of how the applicant proposes to prove the key elements of [her] case." *Id.* at 763 (quotation marks omitted). In assessing the merits, the court does not simply "accept [the plaintiff's] allegations as true" or "give him the benefit of all reasonable inferences in his favor, as would be the case in evaluating a motion to

---

[4] Following the visit with Dr. Liaw, Rutledge was evaluated by a non-party psychiatrist who determined that she was exhibiting signs of psychosis. The dosage of one of her psychiatric medications was increased. (ECF 17-3 at 34.)

4

dismiss on the pleadings." *Doe v. Univ. of S. Indiana*, 43 F.4th 784, 791 (7th Cir. 2022). Instead, the court must make an assessment of the merits as "they are likely to be decided after more complete discovery and litigation." *Id.*

On the second prong, "[i]ssuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with . . . injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22. Mandatory preliminary injunctions—"those requiring an affirmative act by the defendant"—are "cautiously viewed and sparingly issued." *Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020). Additionally, in the prison context, the court's ability to grant injunctive relief is limited. "[I]njunctive relief to remedy unconstitutional prison conditions must be narrowly drawn, extend no further than necessary to remedy the constitutional violation, and use the least intrusive means to correct the violation of the federal right." *Westefer v. Neal*, 682 F.3d 679, 681 (7th Cir. 2012) (citation and internal quotation marks omitted); *see also Rasho v. Jeffreys*, 22 F.4th 703, 711-13 (7th Cir. 2022) (outlining strict limitations on granting injunctive relief in correctional setting).

Inmates are entitled to adequate medical care under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To prove a violation of this right, a prisoner must show (1) he had an objectively serious medical need and (2) the defendant acted with deliberate indifference to that medical need. *Id.* A medical need is "serious" if it is one that a physician has diagnosed as mandating treatment, or one that is so obvious

even a lay person would recognize as needing medical attention. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005).

On the second prong, deliberate indifference represents a high standard. "[N]egligence, gross negligence, or even recklessness as the term is used in tort cases is not enough" to prove an Eighth Amendment violation. *Hildreth v. Butler*, 960 F.3d 420, 425–26 (7th Cir. 2020). Instead, the inmate must demonstrate "a culpability standard akin to criminal recklessness." *Thomas v. Blackard*, 2 F.4th 716, 722 (7th Cir. 2021). Inmates are "not entitled to demand specific care," *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 965 (7th Cir. 2019), nor are they entitled to "the best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Rather, they are entitled to "reasonable measures to meet a substantial risk of serious harm." *Forbes*, 112 F.3d at 267. The court must "defer to medical professionals' treatment decisions unless there is evidence that no minimally competent professional would have so responded under those circumstances." *Walker*, 940 F.3d at 965 (citation and quotation marks omitted). In essence, the Eighth Amendment protects prisoners from "grossly inadequate medical care." *Gabb v. Wexford Health Sources, Inc.*, 945 F.3d 1027, 1033 (7th Cir. 2019).

Based on the present record, Rutledge has not shown a likelihood of success in proving deliberate indifference to a serious medical need. She is under the regular care of Dr. Liaw, and this doctor has evaluated her complaints of tremors and heart pain but has found no abnormalities. In his view, these symptoms are indicative of anxiety. Dr. Liaw is also aware of her reports of digestive problems; she is receiving fiber supplements and was counseled on increasing her water intake. It is Dr. Liaw's

6

professional view that further laboratory testing and treatment are not medically indicated at this time. His professional opinion is entitled to deference in this proceeding. *Walker*, 940 F.3d at 965.

Rutledge firmly believes she is suffering from a disease (ECF 18), but her own subjective assessment of her medical needs or disagreement with Dr. Liaw does not establish an Eighth Amendment violation. *Lockett v. Bonson*, 937 F.3d 1016, 1024 (7th Cir. 2019). She states that Dr. Liaw is "lying" and never told her he thought she suffered from anxiety. She also claims to be unaware of her prior laboratory results. (ECF 18 at 1-2.) At most, she has shown that Dr. Liaw did not communicate well with her at her last visit, but this does not prove deliberate indifference to a serious medical need. She is not entitled the extraordinary remedy of a preliminary injunction.

For these reasons, the plaintiff's motion for a preliminary injunction (ECF 3) is **DENIED**.

SO ORDERED on October 1, 2025.

　　　　　　　　　　　　　　　　　　　/s/*Cristal C. Brisco*　　　　　　　　
　　　　　　　　　　　　　　　　　　CRISTAL C. BRISCO, JUDGE
　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT COURT